A01A0866. GEORGIA TEXTILE MACHINERY, INC. v. FEDERAL EXPRESS CORPORATION.
(556 SE2d 845)

PHIPPS, Judge.

On May 25, 1998, Federal Express Corporation (FedEx) accepted a shipment of five packages of vertically lapped fibers in the Czech Republic for delivery to Georgia Textile Machinery, Inc. (GTM) in Dalton, Georgia. FedEx delivered the shipment on June 1, 1998. A few days later, GTM telephoned FedEx, complaining that the goods had been delivered damaged. It faxed FedEx notice of the damaged goods on June 30, 1998. GTM discarded the entire shipment without inspection by FedEx. FedEx billed GTM for the shipping charges on July 22, 1998, and GTM refused to pay.

FedEx sued GTM to recover the unpaid shipping charges. GTM counterclaimed, alleging that FedEx had "ruined" the goods during transit. FedEx sought summary judgment on its claim and argued that GTM's counterclaim was barred by a notice provision of the Warsaw Convention.[1] GTM sought summary judgment as to FedEx's claim, arguing that it was barred because FedEx failed to bill it in accordance with 49 CFR § 377.205 (a) (2). The trial court granted FedEx's motion and denied GTM's motion. GTM appeals, contending that the notice provision does not apply to its counterclaim and that the billing regulation precludes FedEx's claim. We disagree with GTM's contentions and affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

---

[1] Officially denominated "Convention for Unification of Certain Rules Relating to International Transportation by Air" and reprinted at 49 USC § 40105.

[2] OCGA § 9-11-56 (c).

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1. GTM contends that its claim is not barred by the notice provision of the Convention because the shipper did not sign the associated FedEx international air waybill and thus the Convention, referenced therein, cannot be binding upon it.

The air waybill stated, "By giving us your shipment, you agree to the conditions on the back of this Non-Negotiable Air Waybill. Certain international treaties, including the Warsaw Convention, may apply to this shipment and limit our liability for damage, loss or delay, as described in the Conditions of Contract." The air waybill also stated, "Use of this Air Waybill constitutes your agreement to the Conditions of Contract on the back of this Air Waybill." And text on the back provided, "By giving us your shipment, you agree, regardless of whether you sign the front of this Air Waybill for yourself or as an agent for and on behalf of any other person having an interest in this shipment, to all terms of this NON-NEGOTIABLE Air Waybill. . . ."

The Convention, governing the liability of air carriers in international air travel and preempting local law in areas where it applies,[4] creates and exclusively governs GTM's claim.[5] Article 26 of the Convention requires that the recipient of a delivery complain in writing of damaged goods within seven days of receipt.[6] Failure to do so defeats an otherwise valid damage claim.[7] It is uncontroverted that GTM failed to provide written notice of the alleged damage within seven days of delivery. It seeks to avoid summary judgment against it, however, by pointing out that the air waybill does not contain the shipper's signature. It argues that therefore it is not contractually bound by the Convention referenced by the air waybill.

The Convention is clear: "The absence, irregularity, or loss of [an air waybill] shall not affect the existence or the validity of the contract of transportation which shall, subject to the provisions of article 9, be none the less governed by the rules of this convention."[8] And in this case, the provisions of Article 9 do not affect FedEx's right to notice under Article 26. Article 9 provides that a carrier which has failed to include on the air waybill certain items listed in Article 8 "shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability." Article 8 does not list the

---

[4] *Highlands Ins. Co. v. Trinidad & Tobago &c. Corp.*, 739 F2d 536, 537, n. 2 (11th Cir. 1984).

[5] See Warsaw Convention, Articles 1, 18, 24; see also *El Al Israel Airlines v. Tseng*, 525 U. S. 155 (119 SC 662, 142 LE2d 576) (1999); *Boehringer-Mannheim Diagnostics v. Pan American World Airways*, 737 F2d 456, 458 (5th Cir. 1984); *Highlands Ins. Co.*, supra.

[6] *Highlands Ins. Co.*, supra at 538.

[7] Id.

[8] Warsaw Convention, Article 5 (2).

shipper's signature as a required item.[9] Thus, although the shipper did not sign the air waybill, GTM's claim remains governed by the Convention, and FedEx is not deprived of the notice protection of Article 26.

2. Relying on *Dalton v. Delta Airlines*,[10] GTM claims that the goods were "destroyed," thus eliminating the notice requirement of Article 26. In *Dalton*, dogs in good condition were handed to Delta Airlines for transport. Upon reaching the destination, however, a Delta agent notified the shipper's representative that the dogs had arrived dead.[11] The district court granted Delta Airlines summary judgment because the owner had failed to provide written notice of a complaint within seven days as required by Article 26 of the Convention.[12] The former Fifth Circuit determined that Article 26 was applicable only to cases involving damaged or delayed goods,[13] then determined that the dead dogs were "destroyed" goods. The Fifth Circuit reversed the district court, holding that no Article 26 notice was required for destroyed goods "since notice would serve no useful purpose to the carrier" who already knows that the goods were delivered destroyed.[14] Construing this holding, the Eleventh Circuit later held that "if *Dalton* applies at all beyond animal cases, it controls only situations where the destruction is both total and obvious."[15]

In this case, GTM supports its claim that the goods were destroyed by pointing to its interrogatory response that states: "The roll was wrapped in plastic — this plastic was torn in various places. The roll was white originally — when received grease etc., was all over it and the fabric was torn. There were holes in it etc." But although GTM claims that the packages were totally "ruined" before delivery, its agent accepted the shipment without any such notation. Receipt without complaint by the person entitled to the goods is prima facie evidence that the goods have been delivered in good condition.[16] GTM presented no photographs of the alleged destruction. We agree with the trial court that the evidence here was insufficient as a matter of law to establish that the shipment was destroyed and that the destruction was total and obvious to FedEx so as to bring this case within the rule of *Dalton*. Accordingly, the trial court did not err in determining that FedEx was entitled to Article 26 notice.

3. GTM contests the trial court's denial of its motion for sum-

---

[9] See Warsaw Convention, Article 8 (a)-(i), (q).
[10] 570 F2d 1244 (5th Cir. 1978).
[11] Id. at 1247.
[12] Id. at 1245.
[13] Id. at 1246; Warsaw Convention, Article 26 (2).
[14] *Dalton*, supra at 1247-1248.
[15] *Highlands Ins. Co.*, supra at 539 (II).
[16] Warsaw Convention, Article 26 (1); *Highlands Ins. Co.*, supra at 538 (I).

mary judgment against FedEx's claim. It cites 49 CFR § 377.205 (a) (2), a billing regulation applicable to certain transportation by motor vehicle by common carriers of property.[17] The regulation provides, "The time period for a carrier to present its freight bill for all transportation charges shall be 7 days, measured from the date the carrier received the shipment. This time period does not include Saturdays, Sundays, or legal holidays." GTM argues that because FedEx did not bill it within that time period, the regulation bars FedEx's claim.

FedEx counters that the shipment was not subject to the billing regulation because pursuant to 49 USC § 13506 (a) (8) (B), it was exempt from the billing regulation. That Code section pertains to "transportation of property (including baggage) by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier. . . ." The trial court agreed with FedEx.

On appeal, GTM argues only that there is no evidence that the shipment was in "continuous movement," stating in its brief, "[i]t is difficult to understand how the goods could have been in *continuous movement by air carrier for a week* prior to delivery."[18] A shipment, however, need not be in motion throughout transit to be in "continuous movement" within the meaning of the subject regulation.

Rulings by the former Interstate Commerce Commission and court decisions that have considered whether property was transported as part of a "continuous movement" under identical language of former 49 USC § 10526 (a) (8) (B)[19] have not imposed a literal interpretation of the term. Instead, the test used to determine the nature of the transportation of property is the intent of the shipper at the start of the transportation.[20] This intent fixes and governs the character of the shipment, provided that intention persists throughout the entire movement.[21] The intent of the shipper can be ascertained from all the facts and circumstances surrounding the transportation, e.g., "the presence of common incidents of through carriage such as through billing, uninterrupted movement, continuous possession by the carrier, or unbroken bulk."[22] Further, the movement of

---

[17] 49 CFR § 377.101.

[18] (Emphasis in original.)

[19] "The Interstate Commerce Commission does not have jurisdiction under this subchapter over . . . transportation of property (including baggage) by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier or (to the extent so agreed by the United States and approved by the Civil Aeronautics Board or its successor agency) by a foreign air carrier."

[20] See, e.g., *Package Express Svcs.*, 133 MCC 124 (1983); *Fabulous Fur Corp. v. United Parcel Svc.*, 664 FSupp. 694 (E.D. N.Y. 1987).

[21] *Package Express Svcs.*, supra.

[22] *Armstrong World Indus.*, 2 ICC2d 63 (1986).

the goods may be continuous even in the absence of such incidents where it is admitted that a shipment made to the ultimate destination had at all times been so intended.[23] Delivery of goods to customers is often a multi-step process involving temporary interruptions, and the simple fact that the transit is temporarily interrupted does not mean that the shipment is no longer a part of a "continuous movement."[24]

Here, the uncontroverted evidence shows that, from the start, the fixed and persistent intent of the shipper was for the shipment to move through to its ultimate destination, GTM in Dalton. And FedEx delivered it there one week after accepting it. Any transportation by motor vehicle of the shipment was part of a continuous movement, and the mere fact that the movement of the shipment may have been temporarily interrupted does not change its character to deprive FedEx of the exemption.[25]

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 28, 2001.

*John T. Longino*, for appellant.
*James W. Martin*, for appellee.

---

[23] Id.

[24] *Quaker Oats Co.*, 4 ICC2d 1033 (1987).

[25] Accord *Package Express Svcs.*, supra (determining that delayed, misplaced, or misrouted baggage, originally intended to accompany a passenger, maintains its "continuous movement" status, and concluding that any motor transportation of such baggage that has had an immediate prior or subsequent movement by air falls within 49 USC § 10526 (a) (8) (B)); compare *Fabulous Fur Corp.*, supra at 696, n. 3 (where shipments arrived by air to the shipper's agent, and upon receipt of the shipments, the agent broke down and repackaged the shipments for subsequent deliveries to individual recipients, court found that the shipments were not continuous enough to fall within 49 USC § 10526 (a) (8) (B)).